UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

IN RE: ANTHONY GASSON,

               Debtor.

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3/31/2021
```

ANTHONY GASSON,

               Appellant,

   -against-

PREMIER CAPITAL, LLC,

               Appellee.

No. 19 Civ. 1172 (NSR)
OPINION & ORDER

NELSON S. ROMÁN, United States District Judge

     This appeal arises from the bankruptcy petition of Anthony J. Gasson (referred to herein as "Debtor," "Appellant," and "Mr. Gasson") filed in the Southern District of New York, Case No. 12-23703 (RDD), and the Adversary Proceeding Number 14-08217 initiated by Premier Capital, LLC (referred to herein as "Premier" and "Appellee"). On May 3, 2019, Mr. Gasson appealed the Bankruptcy Court's final order entered on January 22, 2019 at Docket No. 103 entitled "Order Denying Discharge" ("Discharge Order") pursuant to 28 U.S.C. § 158(a). For the following reasons, the Bankruptcy Court's Discharge Order is AFFIRMED in its entirety.

## BACKGROUND

     The following facts are derived from the unchallenged factual findings of the Bankruptcy Court and the record on appeal.

**Appellant's Business Dealings and the Accumulation of Debt**

Since the 1970s, Appellant has worked as either a certified public accountant, at one point employed by Price Waterhouse, or a financial consultant, offering services to clients through companies that he or his wife formed. Initially, he formed a corporation called T.G. Capital that Appellant used to market his consulting services during the early 1990s. T.G. Capital did not have any employees and generated income through financial consulting services that Appellant provided to T.G. Capital's clients.

During the 1990s and early 2000s, Appellant was also a part owner in three companies that manufactured and sold clothing and accessories: Swirl Corporation, Nick Textiles, and Easley Textiles. The relevant debt interest litigated in the Adversary Proceeding originated from financial difficulties arising from these companies.

In or around 1995, Swirl Corporation filed for Chapter 11 along with its sister companies Nick Textiles and Easley Textiles. Swirl Corporation continued operations through 2003 but eventually failed, leaving behind a corporate debt of $65,765.82 to the Internal Revenue Services ("IRS") and a $498,500.54 debt to Chemical Bank, now operating under J.P. Morgan Chase ("Chase Debt"). The debts were personally guaranteed by Appellant and his business partner, Joseph Santarlasci. The Chase Debt eventually became a judgment in 2004 after Swirl stopped making payments to J.P. Morgan Chase, and the Swirl companies were fully liquidated.

Nick Textiles and Easley Textiles also had small lines of credit with First Union National Bank of South Carolina for approximately $30,000 and $25,000, respectively, and those debts resulted in judgments of $65,256.69 and $27,752.37 against Appellant personally due to his guarantees. Those judgments, along with the judgment on the Chase Debt were subsequently purchased by Appellee Premier. Separately, Appellant had accumulated personal credit card debt of approximately $85,000.

2

Meanwhile, Appellant was able to pay off some of his outstanding liabilities.  He settled the tax debt with the IRS, enrolled in credit counselling in 1999, surrendered all of his credit cards, and (after six years of monthly $1200 payments) paid off all credit card debts.  Appellant also claims that he believed that he had an agreement with his business partner establishing that his partner, and not Appellant, would settle the Chase Debt on behalf of both of them.  The business partner did enter into an agreement with J.P. Morgan Chase and Appellant claims he is a beneficiary to that settlement.  Appellee contended that the settlement agreement only applied to the business partner.  During this time, Appellant was, by his own admission, "under siege" from creditors and "there was no easy way [he] could earn any income" due to pressure put upon him by his creditors.

**Appellant Begins to Provide Consulting Services through Soroban**

In the midst of these financial difficulties, Appellant's wife, Jacqueline Gasson ("Mrs. Gasson") formed a corporation called Soroban.  Mrs. Gasson was listed as the sole owner, chairman of the board, secretary, and treasurer of Soroban.  Mrs. Gasson has a degree in nursing, worked full time as a nurse, and possessed no experience or training in business or accounting. Appellant was listed as the president, chief executive officer, and chief operating officer of Soroban.  As mentioned above, Mr. Gasson had decades of experience in business and accounting and had operated a similar business in the past – *i.e.*, T.G. Capital.  As Appellant states "Soroban operated mainly as a consulting business with Appellant providing the consulting services."

Mr. Gasson did the vast majority, if not the entirety, of work operating and generating revenue for Soroban.  This included, among other things, preparing federal tax returns, signing checks for the company, executing promissory notes on Soroban's behalf to a company owned by his daughter, and performing consulting services for Soroban's clients.  By contrast, Mrs. Gasson neither received reports concerning Soroban's business nor played any role in business decisions

of Soroban as a shareholder of the company. Her sole contribution appears to be insisting that no debt be incurred by Soroban.

During the relevant time period, Appellant received income from consulting through Soroban. Although he represented that his income was only $6,000 in 2011 and filed a tax return in 2012 showing no income, Soroban regularly generated significant revenue during that period. Indeed, in 2011, Soroban had total assets in cash and inventories worth $111,676. Likewise, in 2010, Soroban's gross revenue was $193,877. Rather than take a regular salary for his consulting work, which indisputably generated all of Soroban's revenue, Appellant used Soroban's funds to pay for personal expenses as they arose. These expenses included household expenses, cash allowances for Appellant and his wife, subscriptions to certain publications, home remodeling expenses, gift payments to his children, personal tax returns, dental work, and medical expenses. Appellant did not maintain a bank account and instead transferred money from Soroban's bank account to Mrs. Gasson's bank account, and then withdrew those funds from her bank account to pay for the aforementioned expenses. Similarly, Mr. Gasson's credit card bills for personal and business-related expenses were paid by Soroban.

### Appellee Initiates Debt Collection from Appellant and Appellant Files Bankruptcy Petition

Between May 2011 and May 2012, Appellee commenced debt collection efforts against Appellant in connection with the three judgments it had acquired from J.P. Morgan Chase and First Union National Bank of South Carolina. As a part of these efforts, Appellee served Mr. Gasson with an information subpoena seeking information relating to his and Mrs. Gasson's financial affairs. In response to the subpoena, Appellant stated that he did not have any sources of income, 1099 income, or ownership of corporations or partnerships. He also represented that he did not have any checking, savings, CD, or investment accounts, either individually or jointly with

a third party.  He further represented that he had no interests in corporations, partnerships, and other business entities, and earned no salary from such interests.  In response to questions regarding Mrs. Gasson's sources of income, Appellant refused to provide any information on the basis that it was irrelevant.

Subsequently, in September 2012, Appellant filed a voluntary petition for relief with the Bankruptcy Court under Chapter 7 of the Bankruptcy Code.  In his Schedule of Assets and Liabilities, Appellant represented that he owned only $7,000 in personal property, had no cash on hand or in bank accounts, listed an "individual consulting business" with a value of $0, omitted any value with respect to his regular income, and under the category of monthly income listed "in-kind" payments of $600 from Soroban and irregular in-kind payments from an entity affiliated with one of Soroban's clients, IGC, Inc, of $6,000.

Almost two years later, Appellee initiated an Adversary Proceeding seeking, among other things, an order denying Mr. Gasson discharge under Section 727(a)(2)(A) of the Bankruptcy Code on the basis that Appellant had transferred and concealed assets during the one-year pre-petition lookback period.  After a trial, the Bankruptcy Court ruled in favor of Premier with respect to their application to deny Mr. Gasson discharge.  Mr. Gasson's appeal and this Opinion follows.

## **STANDARD OF REVIEW**

As an initial matter, the parties largely agree as to the applicable standard the Court should employ in reviewing the Bankruptcy Court's December 13, 2018 Post-Trial Memorandum of Decision (Appellant's Appendix Tab F ("Post Trial Decision") (ECF No. 8-7)).  Appellant contends that findings of fact are reviewed for clear error, legal conclusions are subject to de novo review, and mixed questions of fact and law are subject to de novo review.  (*See* Brief for Appellant ("Gasson Mem") (ECF No. 8) at 12-13.)  Appellees concur with Appellants as to the basic standard of review, but emphasize the deferential nature of review for clear error.  (*See* Brief for Appellee

("Premier Mem") (ECF No. 12) at 8-11.)  In his reply papers, Appellant also observes that "the standard determining that debt is not dischargeable must be proved by a preponderance of the evidence."  (Reply Brief for Appellant ("Gasson Reply") (ECF No. 15) at 3.)  The Court agrees that preponderance of the evidence is the applicable standard that the Bankruptcy Court was bound to apply, but disagrees with Appellant to the extent he is contending that this Court is obligated to apply a preponderance of the evidence standard on appeal.

Under de novo review, the Court affords no deference to the Bankruptcy Court's decision and decides the question as if no decision had been previously rendered.  *See In re Reilly*, 245 B.R. 768, 772 (2d Cir. BAP), *aff'd*, 242 F.3d 367 (2d Cir. 2000) ("A de novo review allows us to decide the issue as if no decision had been previously rendered . . .. No deference is given to the Bankruptcy Court's decision.") (*quoting In re Miner*, 229 B.R. 561, 565 (2d Cir. BAP 1999)).

By contrast, review for clear error is much more deferential to the bankruptcy court's findings.  Clear error exists "when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Dist. Lodge 26, Int'l Ass'n of Machinists & Aerospace Workers, AFL–CIO v. United Techs. Corp.*, 610 F.3d 44, 51 (2d Cir. 2010) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746 (1948)).  While the lower court's findings of fact are not conclusive on appeal, the party that seeks to overturn them bears a heavy burden. "To be clearly erroneous, a decision must strike [us] as more than just maybe or probably wrong; it must . . . strike [us] as wrong with the force of a five-week-old, unrefrigerated dead fish."  *In re Reilly*, 245 B.R. at 772 (quoting *In re Miner*, 229 B.R. at 565).  "Particular deference is given to a bankruptcy court's findings on credibility."  *In re Portaluppi*, 609 F. App'x 30, 31 (2d Cir. 2015) (citing *In re CBI Holding Co.*, 529 F.3d 432, 450 (2d Cir. 2008)).

This appeal largely concerns issues related to findings of fact that are subject to review for clear error. "Courts in this Circuit have generally found that the question of a debtor's knowledge and intent under Section 727(a) . . . are questions of fact to which the clear error standard applies." *St. Clair v. Cadles of Grassy Meadows II, L.L.C.*, 550 B.R. 655, 665 (E.D.N.Y. 2016) (collecting cases).

## **DISCUSSION**

### I.     **Whether Bankruptcy Court Clearly Erred in Concluding that Defendant Owned Soroban**

> *A.     Applicable Law*

Pursuant to Section 727(a)(2)(A) of the Bankruptcy Code, discharge is precluded when "the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed—(A) property of the debtor, within one year before the date of the filing of the petition." 11 U.S.C. § 727(a)(2)(A). Reciting the elements of a Section 727(a)(2)(A) claim, courts have said that the plaintiff must establish that the debtor "(1) with intent to hinder, delay, or defraud a creditor (2) transfers, removes, destroys, mutilates, or conceals, or has permitted to be transferred, removed, destroyed, mutilated, or concealed, (3) property of the debtor (4) within one year of the petition date." *In re Shah*, No. 07-13833, 2010 WL 2010824, at *7 (Bankr. S.D.N.Y. May 13, 2010); *see also In re Levi*, 581 B.R. 733, 744 (Bankr. S.D.N.Y. 2017).

"The Bankruptcy Code does not specify what constitutes 'property of the debtor' for purposes of Section 727(a)(2)(A), and so courts have looked to state law to determine what constitutes an interest in property." *In re Levi*, 581 B.R. 733, 744 (Bankr. S.D.N.Y. 2017); *see also Kaufman v. Chalk & Vermilion Fine Arts*, LLC, 31 F. App'x 206, 208 (2d Cir. 2002) ("Because the Bankruptcy Code does not define 'interests in property,' state law controls."). In

cases where the debtor is alleged to have equitable ownership of a business, rather than legal title, courts have used a multifactor test to ascertain the debtor's ownership (or lack thereof). *See, e.g., Darwin (Huck) Spaulding Living Trust v. Carl (In re Carl)*, 517 B.R. 53, 65-66 (Bankr. N.D.N.Y. 2014).

The Bankruptcy Court focused upon Mr. Gasson's beneficial interest in Soroban and applied the multi-factor test articulated in *In re Carl* to ascertain whether such a beneficial interest existed. (*See* Post-Trial Decision at 23-25.) *In re Carl* identifies the following factors as determinative of a debtor's equitable interest in a business: (1) whether a debtor previously owned a similar business; (2) whether the debtor left his previous business venture under financial duress; (3) whether the debtor transferred his or her salary, or the right to receive salary to a family member or to a business entity owned by an insider; (4) whether the debtor is actively and actually involved in the success of the insider business; and (5) whether the debtor retains some of the benefits of the salary, such as having expenses paid for by the insider of the business. 517 B.R. at 65-66; *see also In re Klutchko*, 338 B.R. 554, 571 (Bankr. S.D.N.Y. 2005) ("[N]umerous courts have found that debtors who transferred all of their salary, or their right to receive salary, to a family member or to a corporation owned by a family member, yet retained the benefits of such salary, as here, should be denied a discharge.") (collecting cases).

B.    *Application*

Appellant argues that the Bankruptcy Court inappropriately applied the *In re Carl* "factors with a filter favoring the Plaintiff's position" and did not sufficiently credit the guidance from *In re Carl* that "a court may grant a discharge if the debtor demonstrates a legitimate reason for the insider business relationship." (Gasson Mem. at 15.) Appellee counters that the Bankruptcy Court correctly applied each of the underlying factors identified in determining that Appellant held an equitable interest in Soroban. (*See* Premier Mem at 12-15.) The Court agrees with Appellee.

*First*, the Bankruptcy Court carefully applied significant undisputed evidence towards each of the aforementioned factors in reaching its conclusion.  It is undisputed, for example, that Appellant operated a similar business to Soroban – *i.e.*, T.G. Capital.  Likewise, Appellant does not dispute that he left his previous business venture under financial duress and affirmatively argued at trial and in his submissions to this Court that he was under siege.  Regardless of Appellant's purported motives, there can be no dispute that his consulting services generated significant income that was nominally transferred to Soroban and that he did not claim any salary for services generating hundreds of thousands of dollars.  In other words, there can be no dispute that he transferred his right to receive an income to Soroban.  Finally, there is no dispute that he received significant benefits from Soroban in terms of reimbursing numerous personal expenses through Soroban's funds.

Ultimately, it is telling that Appellant did not seek to refute any of these factual findings in his appeal and instead vaguely suggests that the Bankruptcy Court did "patched the facts of Debtor's circumstances to these factors [recited in *In re Carl*] with a filter favoring [Appellee's] position."  (Gasson Mem at 15.)  However, there is no indication that any of these facts are in serious dispute and, accordingly, it is hard to envision how the Bankruptcy Court could have weighed those facts differently when they directly satisfy each of the elements recited in *In re Carl*.

*Second*, there is no real dispute that the Bankruptcy Court applied the correct legal standard.  Instead, Appellant argues that the Bankruptcy Court should have also given more credit to his purportedly legitimate basis for the manner in which he operated his finances.  To this end, he argues that "[a]t the time Soroban was created, both the Debtor and his wife had credible, legitimate reasons for her to own Soroban" but only seems to identify a single "legitimate" reason

– *i.e.*, so that his wife could hold the debt instead of him and restrain him from assuming additional debt.  (Gasson Mem at 16-17.)

There are certainly instances where a court, after finding that the five factors above were present, "may grant a discharge if the debtor demonstrates a legitimate reason for the insider business relationship."  *In re Carl*, 517 B.R. 53, 66 (Bankr. N.D.N.Y. 2014).  In *In re Klutchko*, Bankruptcy Judge Drain systematically identifies several categories of cases in which courts have declined to find an equitable interest under section 727(a)(2) pursuant to certain policy interests or indicia of legitimacy in the debtor's conduct.  338 B.R. 554, 571 (Bankr. S.D.N.Y. 2005). Appellant seems to invoke the first of these exceptions, *i.e.*, that "discharge should not be denied if the debtor had a bona fide employment relationship with the insider employee." *Id.*  Emblematic of this type of case is *In re Reedy*, where the bankruptcy court held that there was no transfer of property by a debtor providing consulting services for his wife's business where "debtor's wife completely capitalized the business and maintained the books and records while debtor performed consulting services" and "[s]uch control was a condition to debtor's wife's capital contribution." 169 B.R. 28, 30 (Bankr. E.D. Va. 1994).  The circumstances in *In re Reedy* are readily distinguishable from the instant case.  Here, an opposite set of facts exist – *i.e.*, (1) Mr. Gasson was responsible for moving funds between Soroban's bank accounts; (2) Mr. Gasson prepared and signed all federal tax returns for the company; and (3) Mrs. Gasson conceded that she had little or no involvement in the operations of Soroban and did not receive reports concerning Soroban's business or any documents in her capacity as an officer of the company.

Having reviewed the record on appeal, this Court affirms the Bankruptcy Court's finding that Appellant retained an equitable interest in Soroban.

II.     **Whether the Bankruptcy Court Erred in Holding that Debtor Concealed His Interest in Soroban**

    *A.     Applicable Law*

As mentioned above, in order to establish a basis to deny discharge under Section 727(a)(2), a plaintiff must demonstrate that the debtor concealed his interest in the subject property.  To ascertain whether a concealment for the purposes of Section 727(a)(2) has occurred, courts ask: "[d]id the [debtor] place assets beyond the reach of creditors or withhold knowledge of assets by failing or refusing to divulge information to which creditors were entitled?"  *In re Hayes*, 229 B.R. 253, 259 (B.A.P. 1st Cir. 1999) (citing *Marine Midland Bank v. Portnoy (In re Portnoy)*, 201 B.R. 685, 694 (Bankr.S.D.N.Y.1996); *PaineWebber Inc. v. Gollomp (In re Gollomp)*, 198 B.R. 433, 440 n. 6 (S.D.N.Y.1996)).  On the one hand, "[m]ere failure to volunteer information to a creditor is insufficient . . . to constitute concealment."  *In re Portnoy*, 201 B.R. at 695.  On the other hand, concealment is "evidenced when a debtor withholds knowledge or refuses to divulge owed information because there is a 'duty to tell' once a debtor begins to set forth the facts surrounding a subject."  *In re Gardner*, 384 B.R. 654, 663 (Bankr. S.D.N.Y. 2008).

In practice, concealment can occur with a wide range of assets, such as real property, including where a debtor failed to "list the timeshares in Barbados on his schedules or disclose them in the 341(a) meeting and instead stated that the corporations had no assets, and . . . did not list bank accounts which may or may not have had a positive balance on his schedules."  *Id.* at 664.  Likewise, concealment can occur with respect to beneficial interests in a business, including where the debtor "diverts the fruits of his industry to family members, who then provided him with the use and enjoyment of material comforts purchased with those fruits."  *In re Carl*, 517 B.R. at 67-68 (quoting *In re Coady*, 588 F.3d 1312, 1316 (11th Cir. 2009)).  For example, in *In re Coady*, the Eleventh Circuit held that debtor had concealed his beneficial interest in a business owned by

his wife, where debtor was "the sole person actually and actively involved in the [businesses,] and [their] success depended solely on his continued efforts" and debtor's "personal use of business accounts, along with his wife's financial support, replaced any regular compensation that might otherwise have been available to satisfy his creditors' claims."  588 F.3d at 1315-1316.  *See also In re Ogalin*, 303 B.R. 552, 558 (Bankr. D. Conn. 2004) (finding concealment where debtor diverted "the fruits of his industry to other Ogalin family members, who then provided him with use and enjoyment of material comforts purchased with those fruits").

  B. *Application*

  The Bankruptcy Court in this action identified several cases in which courts concluded that the debtor diverted fruits of his industry to family members as a form of concealment, and concluded that they were analogous to the instant case.  (*See* Post-Trial Decision at 25-28.)  In evaluating these cases, the Bankruptcy Court found the following facts dispositive of Appellant's concealment: (1) Appellant repeatedly denied having any interest or business affiliation with Soroban in response to information subpoenas from creditors; (2) Appellant listed zero value for his "consulting business" in his bankruptcy Schedules and Statement of Financial Affairs; (3) Appellant omitted a value when asked his regular income from operation of a business or profession, instead merely listing "in kind" payments from Soroban and IGC of $600 and $6,000, respectively; (4) Appellant's testimony that he did not understand the legal connotation of his misleading disclosures lacked credibility given his sophistication as a consultant to distressed businesses; and (5) the structure of Appellant's financial planning reflecting indicia of concealed income, *e.g.*, despite operating a business that generated more than $100,000 in income on an annual basis, the Debtor maintained no personal bank accounts and instead received monetary benefits indirectly.  (*See id.*)

Appellant argues that the Bankruptcy Court erred because: (1) the nature of his financial planning and organization are legitimate and did not constitute diversion of profits to secondary sources that he could later enjoy and (2) the inconsistencies in his Schedules are not evidence of concealment insofar as they were based on his misunderstanding of the required disclosures. (Gasson Mem at 18-20.)  Appellee responds that the Bankruptcy Court's finding was not clearly erroneous because the debtor's arrangement of his financial affairs was done to keep the fruits of his labor out of the reach of his creditors and that debtor's pre-petition discovery responses to Plaintiff evidence his intent to mislead creditors in order to ensure creditors were unaware of his interest in Soroban and the value of that business.  (Premier Mem at 19-21.)  The Court agrees with Appellee. The Bankruptcy Court's credibility determination that Appellant was aware of the impropriety of his disclosures is not clearly erroneous and Appellant's financial structure reaped benefits in a manner designed to thwart creditors as a matter of law.

*First*, the Court does not find any error in the Bankruptcy Court's factual determination that Appellant failed to divulge information to creditors to which they were entitled.  Critical to the Bankruptcy Court's finding was that Appellant failed to accurately disclose his interest in Soroban, affirmatively misled creditors by suggesting a far lower value to the business and income derived from Soroban, and lacked credibility in explaining that his misleading statements were caused by his own ignorance.  As mentioned, "when findings are based on determinations regarding the credibility of witnesses, Rule 52(a) demands even greater deference to the trial court's findings." *Anderson*, 470 U.S. at 575.  Appellant claims that his "testimony and evidence at trial reasonably explain his misunderstanding" with respect to what he was supposed to disclose in his bankruptcy Schedules.  But the Bankruptcy Court's finding to the contrary was predicated upon a credibility determination and is entitled to great deference.  This deference is clearly

applicable here as Appellant cites to the very testimony that the Bankruptcy Court refused to credit in support of his position that his explanation was reasonable.  (*See* Gasson Mem at 18.)

Relatedly, the Bankruptcy Court's determination that Appellant could not credibly assert ignorance as to the impropriety of his disclosures because he was a sophisticated consultant for distressed businesses is well supported under the facts and law.  Appellant served as a financial consultant in assisting troubled companies that were struggling financially.  (*See, e.g.*, Appellant's Appendix Tab L (ECF No. 8-13) at AG 339-340.)  Based on similar indicia of sophistication, courts have refused to credit testimony that a party was unaware of their obligation to disclose similar sources of income.  *See, e.g.*, *Bank of India v. Gobindram (In re Gobindram)*, 2014 WL 2809078, at *7 (Bankr. E.D.N.Y. June 20, 2014); *In re Gardner*, 384 B.R. 654, 664–65 (Bankr. S.D.N.Y. 2008).  Accordingly, on the basis of Appellant's misleading disclosures alone, the Bankruptcy Court correctly held that Appellant concealed assets.

*Second*, Appellant's structuring of finances derived from his consulting business amounted to an attempt to divert fruits of his industry to family members who then provided him with access to that income.  Appellant claims that he presented evidence that the income only went to Soroban in order to prevent him from acquiring additional debt.  (Gasson Mem at 18.)  Nonetheless, the record indicates that Appellant (1) provided all of the labor for the business of Soroban, (2) withdrew income generated from his labors and transferred it to Mrs. Gasson's bank account; and (3) used the funds transferred into Mrs. Gasson's bank account in order to pay for, among other things, wedding gifts to his children, loans to personal friends, tax returns, dental and medical expenses, travel expenses, a loan for $116,000 to his daughter's business which was never repaid, and a weekly stipend for himself and his wife.  In similar circumstances, courts have found that

sufficient diversion of funds occurred to constitute concealment.  *See, e.g., In re Coady*, 588 F.3d at 1316; *In re Carl*, 517 B.R. at 68.

## III.        Intent to Hinder Creditors

### A.        *Applicable Law*

A Section 727(a)(2) objection to discharge can only be sustained if the debtor concealed the subject property with the actual intent to hinder, delay, or defraud creditors or the Trustee.  11 U.S.C. § 727(a)(2).  The statute is written in the disjunctive; accordingly, an intent to hinder or delay or defraud creditors is sufficient.  Likewise, a court may find the requisite intent through either: (1) direct or explicit proof, or, (2) a preponderance of circumstantial evidence of a debtor's illicit intent, commonly known as the "badges of fraud."  *See Republic Credit Corp. v. Boyer* (*In re Boyer*), 328 Fed. Appx. 711, 714-15 (2d Cir. 2009) (citing *Salomon v. Kaiser* (*In re Kaiser*), 722 F.2d 1574, 1582-83 (2d Cir. 1983)). Intent to "hinder" is shown where a debtor acts "with an intent to impede or obstruct creditors," while the intent to "delay" is shown when the debtor acts "with an intent to slow or postpone creditors."  *In re Levi*, 581 B.R. at 745.

Courts frequently analyze certain "badges of fraud" in order to discern circumstantial evidence as to whether a debtor acted with an intent to defraud.  These badges of fraud include: (i) lack or inadequacy of consideration; (ii) a family, friendship, or close associated relationship between the parties; (iii) the retention of position, benefit, or use of the property in question; (iv) the financial condition of the party sought to be charged both before and after the transaction in question; (v) the existence or cumulative effect of a pattern or series of transactions or course of conduct after incurring of debt, onset of financial difficulties, or pendency of suit by creditors; and (vi) the general chronology of the events and transaction.  *In re Gardner*, 384 B.R. at 663-64.

B.    *Application*

The Bankruptcy Court held that, under the badges of fraud analysis, debtor acted with intent to hinder creditors.  With respect to the first two badges of fraud, the Bankruptcy Court found that there was inadequate consideration for transfers made from Soroban to family members – *e.g.*, he gave Mrs. Gasson a weekly allowance of $250.00 despite her lack of involvement in the company and despite not providing any services that generate income.  With respect to the third badge of fraud, the Bankruptcy Court found that the Mr. Gasson retained beneficial use of the assets of Soroban as evidenced by his payment of both his and his family's personal and household expenses using income generated through Soroban.  With respect to the fourth through sixth badges of fraud, the existence of substantial liabilities against Mr. Gasson juxtaposed against the contemporaneous creation of Soroban as a vehicle for Mr. Gasson to engage in consulting was deemed to be sufficient to indicate an intent to hinder creditors.  Separate from the badges of fraud analysis, the Bankruptcy Court also found that Appellant's misleading disclosures in his bankruptcy Schedules and responses to information subpoenas further supported a finding that he acted with an intent to hinder creditors.

Appellant argues that the Bankruptcy Court viewed the evidence in a biased manner insofar as it inferred an attempt to hinder creditors from the aforementioned evidence and did not weigh certain other facts, including that Appellee did not attempt to collect on the judgment debts until years after Soroban's incorporation and, during that same time, Appellant paid off debts owed to other creditors.  Appellee argues that the Bankruptcy Court considered the badges of fraud, found credible evidence showing Appellant intended to hinder his creditors, and there is no clear error in this factual determination.

A determination of a debtor's knowledge and intent under Section 727(a) is a question of fact to which the clear error standard applies.  *See In re Bonnanzio*, 91 F.3d 296, 302 (2d Cir.1996)

(holding that the district court erred by failing to apply a clearly erroneous standard of review with respect to the bankruptcy court's findings of intent); *In re DeRise*, No. 07CV3083 (JFB), 2008 WL 850253, at *5 (E.D.N.Y. Mar. 27, 2008) ("'The question of a debtor's knowledge and intent under § 727(a)(4) is a matter of fact ....'") (alteration in original) (quoting *Cepelak v. Sears* (In re Sears), 246 B.R. 341, 347 (8th Cir. BAP 2000)); *In re Smith*, No. 3:060–CV–1725 (RNC), 2008 WL 906831, at *1 (D.Conn. Mar. 31, 2008), *aff'd*, 321 F. App'x 32 (2d Cir.2009) ("Whether a person acted with the state of mind prohibited by applicable law, including bankruptcy law, is a pure issue of fact.").  Under a less deferential standard, this Court might credit Appellant's arguments that his use of Soroban as a vehicle for operating his consulting business was not intended to defraud creditors.  However, there was at least sufficient evidence indicating an attempt to hinder creditors such that the Court is not left with the definitive impression that the Bankruptcy Court's holding was in error.

As described above, the evidence presented at trial indicated that Appellant: (1) did not provide accurate responses to information subpoenas and understated his interest in Soroban in his bankruptcy Schedules; (2) gave income derived from his consulting work at Soroban to family members without receiving any consideration; and (3) paid for various expenses with income generated by Soroban.  Similar facts have been deemed dispositive as to the existence of an attempt to hinder.  *See, e.g.*, *In re Postiglione*, No. 8-16-75377-REG, 2019 WL 2590946, at *8 (Bankr. E.D.N.Y. June 24, 2019) (finding intent to defraud where "Debtor regularly had his income deposited into his wife's bank account . . . and then transferred that money into the Small Business Capital One Account to pay his personal expenses."); *In re Beaudry*, 549 B.R. 576, 583 (Bankr. N.D.N.Y. 2016) (holding trustee established a section 727(a)(2)(B) claim when debtor failed to disclose an account receivable on his sworn Schedule B); *Vidro v. Vidro* (*In re Vidro*), 497 B.R.

678, 688 (Bankr. E.D.N.Y. 2013) (finding intent to defraud where the defendant transferred funds to his wife's account over which he had control); *Pisculli v. T.S. Haulers, Inc. et al.* (*In re Pisculli*), 426 B.R. 52, 67 (E.D.N.Y. 2010) ("Appellant's transfer of the truck proceeds to his wife, who placed those funds in her personal bank account and used at least a portion of those funds for her and appellant's personal use, implicates this indicia of fraud."), *aff'd*, 408 F. App'x 477 (2d Cir. 2011).

Appellant does not seriously challenge any of the aforementioned facts or identify any authority suggesting that those facts are insufficient as a matter of law to constitute an attempt to hinder creditors.  Instead, Appellant merely emphasizes countervailing facts that the Bankruptcy Court had considered and rejected – *e.g.*, that Appellant had paid other creditors.  None of these countervailing facts are sufficient to seriously call into question the Bankruptcy Court's factual finding that Appellant acted with intent to hinder creditors.  Accordingly, this Court affirms the Bankruptcy Court's holding Appellant acted with an intent to hinder creditors.

## IV.      Viability of the Continuing Concealment Doctrine

### A.      *Applicable Law*

The final element of a Section 727(a)(2)(A) objection to discharge is that the concealment must occur within one year of the bankruptcy filing.  "While [the Second Circuit] has not yet addressed the issue, other Circuits have recognized a 'continuous concealment' doctrine," pursuant to which "a concealment will be found to exist during the year before bankruptcy even if the initial act of concealment took place before this one year period as long as the debtor allowed the property to remain concealed into the critical year." *In re Boyer*, 328 F. App'x 711, 714 (2d Cir. 2009) (quoting *Rosen v. Bezner*, 996 F.2d 1527, 1531 (3d Cir. 1993)).  "A typical Continuing Concealment claim involves (1) the transfer of property by a debtor who still retains a beneficial interest or equitable interest in the property; and (2) the debtor's continuing to treat the property

in the same manner after the transfer as before the transfer." *In re Shah*, No. 07-13833 (SMB), 2010 WL 2010824, at *7 (Bankr. S.D.N.Y. May 13, 2010) (citation omitted).

In the context of concealing interests to accounts receivable, the court in *In re Palermo* found that the continuing concealment doctrine applied where, before the pre-petition year, the debtor assigned valuable rights to receive payments to third parties and, during the pre-petition year, "continued these activities by cashing checks with HA from his various entities, taking advances from McLean and Herlihy against entitlements in the South Boston and River East transactions, and using his various entities to pay hundreds of thousands of dollars in personal expenses." *In re Palermo*, 370 B.R. 599, 615 (Bankr. S.D.N.Y. 2007). By contrast, the court in *In re Halperin* found insufficient evidence to support a continuing concealment claim where the creditor failed to present evidence, besides their own assertions, "as to the actual disposition of the proceeds" that were allegedly concealed and, accordingly, could not support an allegation that debtor continued to enjoy the benefits of ownership. 215 B.R. 321, 331 (Bankr. E.D.N.Y. 1997).

### B.    Application

The Bankruptcy Court held that the initial concealment of assets in the instant case occurred more than one year before the bankruptcy petition was filed, but that it continued through the pre-petition year. In sum, the pattern of concealment described above, and examined by the Bankruptcy Court, was Appellant's use of Soroban to hold earnings derived from his consulting business while simultaneously drawing down the earnings in the form of cash allowances that were used for personal expenses. The record reflects that this began in 2001, when Soroban was created, and Appellant provided consulting services through that entity. (Appellant's Appendix Tab M (ECF No. 8-14) at AG 582 & AG 688.) This pattern was found to have continued through the pre-petition year as Appellant continued to withdraw funds from Soroban and use them for personal

19

expenses during the pre-petition year.  The Bankruptcy Court also found that the continuing concealment was reflected in Appellant's responses to the information subpoena.

Appellant argues that the Bankruptcy Court erred because: (1) the Bankruptcy Court disregarded certain evidence indicating he did not conceal any assets and (2) the Bankruptcy Court relied upon cases invoking the continuing concealment doctrine that are distinguishable.  For example, Appellant notes that the courts in *In re Gardner* and *In re Boyer* involved the concealment of much more valuable assets – *e.g.*, the debtor in *In re Boyer* strategically transferred assets in a manner that reduced his net worth by $40 million while retaining those assets under his control.  By contrast, there is no allegation here that Appellant secreted tens of millions of dollars.  Appellee does not directly address these arguments and instead restates the findings of the Bankruptcy Court and concludes that there was no clear error.

This Court does not credit Appellant's first argument that he did not engage in concealing assets for reasons described above.  Nor is the Court persuaded by Appellant's argument that cases finding that debtor continued to conceal assets are distinguishable based upon the sheer size of the assets concealed.   Appellant's argument seeks to add a new requirement to the continuing concealment doctrine, *i.e.*, that the predicate concealment that started prior to the pre-petition year and continued during that year also involved "egregious acts."  This Court perceives neither the existing case law or statutory language as mandating a finding of egregious acts as a predicate to denial of discharge, nor deems such a factor a prudent addition to Section 727(a)(2) jurisprudence insofar as it would seem to invite debtors to strategically conceal assets provided that the assets fall beneath a nebulous threshold.

At bottom, the continuing concealment doctrine is applicable to the instant case because: (1) Appellant transferred his right to receive a salary to Soroban in a continuous manner from 2001

through the pre-petition year and (2) Appellant used the income of Soroban to give himself an allowance and pay various personal expenses during this same petition.  The legal conclusion that Appellant engaged in continuing concealment based on the factual finding that he transferred his right to receive a salary to Soroban and then indirectly reaped monetary benefits from Soroban is entirely consistent with the findings of other courts.  *See, e.g.*, *Good v. Kantorik* (*In re Kantorik*), 475 B.R. 233 (Bankr. W.D. Pa. 2012) (finding continuous concealment where debtor no longer maintained any bank account in his name and all of the expenses are paid out of the wife's account, cashed checks using the cash drawer at the family accounting practice, and transferred the accounting practice to his son who was not a CPA but continued to use the practice to generate cash income); *Penner v. Penner* (*In re Penner*), 107 B.R. 171 (Bankr. N.D. Ind. 1989) (finding continuous concealment where a debtor transferred his ownership interest in a dairy farm to his wife but continued to work and manage the farm as he did prior to the transfer and the income from the farm was used to pay the personal expenses of the debtor and his wife).

Accordingly, the Court affirms the holding of the Bankruptcy Court that the continuing concealment doctrine applies.

***

Based on the foregoing, the Court affirms the finding of the Bankruptcy Court's denial of discharge pursuant to Section 727(a)(2).

**V.        Standing to Object to Appellant's Discharge**

Appellant also argues that the Bankruptcy Court erred by finding that Appellee had standing to commence the underlying Adversary Proceeding.  Appellant failed to designate this as an issue on appeal in their Designation and Statement pursuant to Federal Rule of Bankruptcy Procedure 8006.  Nevertheless, the Court finds that Appellee had standing to commence the underlying Adversary Proceeding.  As the Bankruptcy Court correctly analyzed in its Bench

Decision dated February 17, 2017, Appellant's standing argument was predicated upon a challenge to the validity of certain state court judgments and, accordingly, neither this Court nor the Bankruptcy Court has appellate jurisdiction to review Appellant's collateral attack on the judgments obtained in state court pursuant to the Rooker-Feldman Doctrine.  (*See* Appellant's Appendix Tab K (ECF No. 8-12) at 274-282.)

## CONCLUSION

Based on the foregoing, the decision of the Bankruptcy Court is affirmed in its entirety. The Clerk of the Court is kindly directed to CLOSE this case.

Dated:   March 31, 2021                                       SO ORDERED:
         White Plains, New York

                                                     _____

                                                          NELSON S. ROMÁN
                                                       United States District Judge

22